IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

  Vs.                            No.  06-40125-01-SAC

GREGORY E. PFLUM,

        Defendant.

MEMORANDUM AND ORDER

      The case comes before the court on the sentencing of the defendant, Gregory Pflum, following his entry of a guilty plea to count three of a seven-count indictment.  The defendant pleaded guilty to the offense of attempting to evade income tax in violation of 26 U.S.C. § 7201.  The presentence report ("PSR") recommends a base offense level of 18 for a tax loss of $214,871.00 (loss exceeding $200,000.00), plus a two-level enhancement for sophisticated means, less a three-level reduction for acceptance of responsibility.  The applicable guideline range for a total offense level of 17 and a criminal history category of one is 24 to 30 months.  The defendant filed numerous objections to the PSR, and both sides submitted lengthy sentencing memoranda in advance of the sentencing hearing.  The court heard the parties' evidence and arguments

on two different dates and then took the matter under advisement after receiving the parties' supplementary memoranda.  Having considered all matters offered for its review, the court is ready to rule.

**BACKGROUND**

The defendant, Gregory Pflum, is the only child of David Pflum, a tax protestor who was indicted in 2004 and convicted that year in this court by a jury on eight counts of failure to withhold and pay over employment taxes and three counts of failure to file individual income tax returns.  David Pflum was sentenced to a term of thirty-months imprisonment, was released from the Bureau of Prisons in 2007, and is currently on supervised release.  Gregory Pflum worked for his father's company Coil Spring Specialities from 1990 to 2003 and stopped filing annual tax returns and paying income tax after starting work with his father.

On October 4, 2006, the grand jury returned a seven-count indictment against the defendant.  Count one charges that the defendant falsified a bank record by providing a false taxpayer identification number ("TIN") and providing a social security number not assigned to his wife, Lucie Pflum, on November 19, 1998, to First National Bank of St. Mary's on an application to open an account bearing the name of "The Little Flower

2

Security Trust."  Count two charges that the defendant made a material false statement to First National Bank of St. Marys in connection with a loan on October 21, 1998, by failing to disclose that he was in default on his federal income tax debt.  Counts three, four, five and six charge tax evasion offenses for the tax years of 2000 through 2003 respectively, in that the defendant received taxable income and willfully attempted to evade the income tax owing to the United States by failing to make an income tax return, by failing to pay the income tax, and by concealing or attempting to conceal the same from the government by not having the income tax withheld from his wages, by creating sham trusts to avoid having his name on the accounts, by writing payroll checks to a trust rather than himself, and by conducting his affairs so as to conceal his true income.  Count seven seeks forfeiture.

On July 24, 2007, the defendant entered a guilty plea to count three, attempting to evade income tax.  The agreed factual basis for the plea states:

> From approximately 1990 to 2003, Defendant worked at David Pflum's company, Coil Spring Specialities ("Coil Springs") in St. Mary's Kansas.  Taxes were not withheld by Coil Springs during the time Defendant was employed by Coil Springs.  Further, Coil Springs issued no tax documentation to Defendant and others working at Coil Springs.  Defendant stopped submitting annual tax returns and

3

paying income tax after going to work for Coil Springs.  Prior to being
employed by Coil Springs, Defendant properly filed a tax return and
paid taxes on income generated by other work.

When representatives of the Internal Revenue Service
contacted Defendant, he responded with materials supplied by
lawyers and "tax advisors" known in the tax protestor movement and
referred to him by his father.  In exchanges with the Internal Revenue
Service beginning in 1996, Defendant challenged the tax system and
made clear his intention to not submit tax returns and/or pay income
tax.  Accordingly, Defendant knowingly and willfully defeated lawfully
due income tax by knowingly failing to file a tax return in April of 2001
for the tax year 2000.

(Dk. 23, pp. 9-10).  In exchange for the defendant's plea, the government

agreed to recommend a sentence at the low end of the guideline range and

the maximum reduction for acceptance of responsibility.  The government

further said it would not request an upward departure from the guideline

range if the defendant did not seek a downward departure.  The plea

agreement also addressed that the parties understood the dismissed

counts of the superseding indictment and other uncharged related criminal

activity could be considered as relevant conduct in calculating offense level

under the sentencing guidelines.  The defendant, however, expressly

retained "the right to advocate amount of loss to be considered by the

Court and with respect to any other sentencing enhancement contemplated

by the Guidelines."  (Dk. 23, pp. 10-11).

**OBJECTIONS TO PSR**

4

The PSR addendum, as disclosed to the parties, sets forth the parties' timely objections that are unresolved and require a ruling.  It shows the government to have no objections to the PSR.  Nonetheless, the government argued at the hearing and in its supplemental memorandum that the calculations in the PSR "significantly understate" the defendant's tax loss.  (Dk. 44, p. 8).  By agreeing that it has no unresolved objections to the PSR, the government has forfeited its chance to challenge the probation officer's recommendations in the PSR.  *United States v. Albright*, 115 F. Supp. 2d 1271, 1274 -1275 (D. Kan. 2000).[1]  The government stands on its obligation to present all relevant and accurate information for the court to consider in deciding the defendant's objections and in determining an appropriate sentence.  The court, however, will not permit the government to use this obligation as a key to open the door for arguing additional tax losses and proposing new tax loss calculations never

---

[1]The fourteen-day filing requirement in Rule 32(f) exists "so that the objections can be addressed and investigated prior to the sentencing hearing." United States v. Jones, 70 F.3d 1009, 1010 (8th Cir.1995).  If either side could wait until the sentencing hearing to raise an objection, then the opposing side would be deprived of notice and of the opportunity to prepare an evidentiary response.  *See United States v. May*, 413 F.3d 841, 849 (8th Cir.), *cert. denied*, 546 U.S. 1024 (2005).  "The district court has no obligation to consider an objection to the presentence report that is untimely because it is raised for the first time at sentencing."  *Id.*  (citation omitted).

addressed or considered in the preparation of the final PSR.  Such

arguments and issues should have been presented to the PSR writer for

consideration under the procedure outlined in Fed. R. Crim. P.  32(f).  The

government has waived its challenge that the PSR's calculation of an

offense level based on a tax loss of $214,871.00 is an understatement of

the actual loss.

**Defendant's Objection No. 1 (¶¶ 2-23)**

Paragraph one of the PSR states that "Gregory Pflum is the

sole defendant named in a 7-count indictment" and then indicates that the

paragraphs to follow are allegations found in the indictment.  In fact,

paragraphs two through twenty-three of the PSR are the same allegations

found in paragraphs one through twenty-two of the indictment.  The

defendant objects that he only adopts the facts as set out in the plea

agreement and specifically disputes many of those allegations.

Ruling:  As the PSR plainly states, paragraphs two through twenty-

three of the PSR are allegations found in the indictment.  The PSR includes

these allegations under its section of charges and convictions.  The PSR

does not treat these allegations as offense conduct findings which is a

separate section in the report.  The PSR does not rely on those allegations

in its findings or conclusions concerning guideline calculations.   Because the PSR appropriately included these paragraphs as mere allegations in the indictment and does not rely on these allegations for any improper purpose, the court summarily overrules the defendant's objections to these paragraphs.

**Defendant's Objection No. 2 (Tax Loss)**

The defendant specifically objects to the following paragraphs: 35, 36, 38, 39, 42, 45, 47-50, and 54.  The defendant generally objects that the PSR overstates tax loss and groups his objections by tax years and the subject matter of his objection.  For ease of understanding, the court will group the objections exclusively by subject matter and will address them by reference to the particular tax years.

The defendant's base offense level is determined by calculating the tax loss and comparing it to the tax loss table in U.S.S.G. § 2T4.1.  *See* U.S.S.G. § 2T1.1(a)(1).  "If the offense involved tax evasion or . . ., the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed."  U.S.S.G. § 2T1.1(c)(1).  "If the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed and did

7

not pay." U.S.S.G. § 2T1.1(c)(2).  Note A to this subsection states:

> If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income (25% if the taxpayer is a corporation) less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made.

*Id*. at Note A.[2]  Subsection (c) also recognizes that "[i]f the offense involved willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay."  U.S.S.G. § 2T1.1(c)(3).   Finally, application note one states, "[i]n determining the tax loss attributable to the offense, the court should use as many methods set forth in subsection (c) and this commentary as are necessary given the circumstances of the particular case."  U.S.S.G. § 2T1.1, comment. (n.1).

<u>Self-Employment Tax Calculation</u>

The government and the defendant agree that for the tax years 1992 through 1995, the PSR incorrectly relies on tax loss calculations that include self-employment taxes based on the erroneous assumption that the defendant was self-employed for those years.  The defendant's accountant,

_____

[2]The tax loss calculations found in the PSR are consistent with the government's calculations furnished to the PSR writer in the IRS investigative reports.  The number and nature of the defendant's objections certainly call into question the accuracy of those calculations such as to justify use of the twenty percent presumption in Note A.  Resort to this presumption, however, is inappropriate now as it was not advocated by the parties and no use or discussion of it appears in the PSR.

8

Nicholas Novelly, opines this mistake results in the PSR overstating the tax loss for those years in an amount exceeding $10,000.00 (Defendant's Ex. ZZ). The government contends the overstatement is only $5,023.00, as the defendant's accountant wrongly relieves the defendant of liability for that amount of social security taxes which the defendant should have paid personally as withholdings from his salary. (Government Ex. 18D).

Ruling: The defendant does not meaningfully refute the government's position[3] that he did evade paying his portion of social security tax for the tax years of 1992 through 1995 and that these taxes are appropriately treated as part of the "total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c)(1). Application note two also directs: "In determining the total tax loss attributable to the offense (see § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1, comment. (n.2). The defendant's failure to pay his portion of the social security tax for those years is conduct that violates tax laws and that

_____

[3]Because the government does not advocate a loss of social security taxes for any other tax years, the government's position in this regard appears to be taken more to mitigate the effect of its error than to offer an accurate assessment of tax loss for all years in question.

9

is part of the same course of conduct and not clearly unrelated to the

defendant's failure to file federal tax returns and pay his federal income tax.

The court sustains the defendant's objection in part and reduces the tax

loss by $5,023.00.

<u>1994 Capital Gains Tax on Sale of Nevada Property</u>

The defendant objects to the taxable gain of $113,500.00 in

1994 for the sale of real estate that was admittedly titled in his name.  The

defendant asserts the property was actually owned by his father who

maintained it, controlled it, and received all proceeds from the 1994 sale.

The defendant submits the affidavit of his father, David Pflum, as proof that

he acquired the real estate in his name for his father and upon selling the

property he transferred all proceeds to his father.  (Defendant Ex. ZZ-1).

Alternatively, the defendant complains that the IRS calculates the capital

gain without the benefit of any cost basis for the property acquired on

January 8, 1992.  The defendant offers as evidence a deed of trust also

dated January 8, 1992, which shows the same property secured a $50,000

loan.  (Defendant Ex. YY).

The government counters with documentary evidence showing

the defendant and his wife exercised control over the property.  First, they

10

obtained a loan in 1992 secured by this property.  Second, they applied for a mortgage on this property in 1993.  Third, on the same day in 1994, the defendant's wife transferred her property interest to the defendant who in turn transferred the real property to a third-party buyer.  Fourth, the proceeds from the sale were directly transferred to the defendant.  The government points out the defendant did not dispute this capital gain earlier when the IRS sent its notice of deficiency in 1997.  Instead of challenging this calculated part of the 1994 tax debt, the defendant renewed his tax protestor position.  Finally, with respect to the cost basis for the property, the government relies on the testimony of the IRS Auditor, Sharon Vandenberg, that the deed of trust is not reliable evidence of cost basis and that the IRS properly assumed a zero basis.

Ruling:  The deed of trust is persuasive evidence that it is more probably true than not that the defendant was not a mere nominee title owner of this real property and that the cost basis of this property was $50,000.00.  Plainly, the defendant represented to the bank that he was the owner of the property and that he was transferring a trust to the bank in the property to secure a loan given to him and his wife.  The defendant entered into the deed of trust on the property on the same day he purchased the

11

property.  The court attaches little weight to Agent Vandenberg's speculation that the defendant could have purchased the property for less than the amount of the deed of trust granted on the same day as the real estate sale.  The government offers nothing in proof about the nature of this transaction that would justify relying on such a remote possibility or on its extreme position of the property having a zero basis.  The court finds that a $50,000.00 cost basis hardly seems unreasonable in light of the property's selling price of $113,500.00 just two and one-half years later.  Agent Vandenberg testified that the defendant's 1994 tax liability would be approximately $14,000.00 less assuming a cost basis of $50,000.00 and a selling price of $113,500.00.  The court sustains the defendant's objection in part and reduces his tax liability for 1994 by $14,000.00.

Other Tax Loss Objection

The above rulings reduce the defendant's tax loss of $214,871.00 calculated in the PSR to a total tax loss of $195,848.00 (214,871.00 minus $5,023.00 minus $14,000.00).  With a tax loss equal to or less than $200,000, the defendant's base offense level lowers from eighteen to sixteen.  *See* U.S.S.G. § 2T4.1(F) and (G).  The defendant objects that the PSR wrongly attributes as income that part of Coil Springs'

12

larger disbursements in 1999 and 2000 which were gifts and loans from David Pflum to assist the defendant with a home construction project.  The court need not decide this objection, as a favorable ruling would not lower the defendant's base offense level and would not affect sentencing.  For the reasons stated earlier, the court considers the government to have waived its objections to the PSR's tax loss calculations.

**Defendant's Objection No. 3 (Sophisticated Means)**

The sentencing guideline for tax evasion includes a two-level enhancement for "the offense that involved sophisticated means." U.S.S.G. § 2T1.1(b)(2).  Application Note four explains this enhancement is reserved for "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."  U.S.S.G. § 2T1.1, comment. (n.4).  The PSR recommends this two-level enhancement at ¶ 55 and appears to rely on the facts appearing at ¶¶ 38 through 45.

The defendant objects to the enhancement denying that he did anything intentional to conceal his offense and arguing instead that he openly refused to report and pay taxes consistent with his father's teachings and wishes.  Rather than being "especially complex or intricate," his offense conduct was "open and notorious" as he sent letters to the

government plainly stating his intent and decision not to comply with tax

laws.  (Dk. 35, p. 15).  The defendant defends his use of trust accounts as

not motivated to conceal income but, as suggested by his father's

literature, to shield the income from the IRS.  The defendant says he

assumed the IRS had access to bank records whether held in a trust

account or a personal checking account.  The defendant insists his use of

trust accounts with common identifiers did not impede the IRS's access to

them or to his personal bank accounts to which the same money

subsequently and directed flow.  The defendant attributes any difficulty the

government had in determining the defendant's income to be the result of

his employer's refusal to withhold taxes and to provide verifiable

information to the government.  The defendant denies ever providing a

false or incorrect social security number for himself to a bank and explains

his use of the false TIN as based on preprinted documents provided in a

trust handbook and kit from Clark & Associates.  Finally, the defendant

notes that in his father's sentencing this court sustained his father's

objection to this enhancement.

        The government characterizes the defendant's use of trust

accounts as closely resembling the example given in the sentencing

14

guideline's application note of hiding assets or transactions through the use of fictitious entities.  The government argues that after the 1995 tax delinquency notice the defendant then formed the multiple or tiered trusts in 1996 with fictitious TINs and straw trustees.  The government insists that between 1994 and 1999 the defendant's paychecks were paid from one trust account with a false TIN to another trust account with a false TIN and the defendant's name did not appear on the paychecks.  The government contends the defendant hid real estate transactions in the trusts and concealed his income with his salary paychecks made payable to LFST in 1999.  The government distinguishes the defendant's situation from his father's as the defendant here pleaded guilty to tax evasion directly involving sham trusts unlike his father.  The government states that not until the investigation of David Pflum in which bank records were obtained and CSS's money was traced did the IRS become aware of the extent of the defendant's taxable income.

Ruling:  Under Guideline § 2T1.1(b)(2), a defendant convicted of tax evasion should receive a two-level enhancement for "especially complex or especially intricate offense conduct in which deliberate steps are taken to make the offense, or its extent, difficult to detect."  "Conduct such as hiding

assets or transactions, or both, through the use of fictitious entities,

corporate shells, or offshore bank accounts ordinarily indicates

sophisticated concealment."  *See* U.S.S.G. § 2T1.1(b)(2) comment. (n. 4);

*see, e.g., United States v. Butler*, 297 F.3d 505 (6th Cir. 2002)

(enhancement for defendant setting up shell corporations, using post office

drop boxes, aliases and various bank accounts to conceal tax evasion),

*cert. denied*, 538 U.S. 1032 (2003); *United States v. Middlemiss*, 217 F.3d

112, 124 (2d Cir. 2000) (enhancement for defendant listing stocks in wife's

maiden name, creating false paper trail, and accepting only cash

payments); *United States v. Guidry*, 199 F.3d 1150 (10th Cir. 1990)

(enhancement for making checks payable to a bank and converting

proceeds to cash and structuring embezzled funds to avoid Currency

Transaction Reports and detection by the Internal Revenue Service);

*United States v. Rice*, 52 F.3d 843, 849 (10th Cir. 1995) (reversed

sentence with concealment enhancement because fraud was simply

claiming more deductions than actually paid and because "[i]f that scheme

is sophisticated within the meaning of the guidelines, then every fraudulent

tax return will fall within that enhancement's rubric.").  "Although tax

offenses always involve some planning, unusually sophisticated efforts to

16

conceal the offense decreases the likelihood of detection and therefore warrant an additional sanction for deterrence purposes." U.S.S.G. § 2T1.1, comment. (backg'd.).

The court is not persuaded that the government has carried its burden of proving that the defendant engaged in "especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense." U.S.S.G. § 2T1.1, comment. (n.4). As far as the execution of the offense, the defendant openly refused to file tax returns and to pay taxes. He plainly and repeatedly challenged the IRS's authority over him. What the government argues as circumstances indicating an effort to conceal are equally amenable to inferring the defendant's simple and misguided belief that he could shield income from being a personal taxable event by having salaries paid from a trust and/or paid into a trust.

In the court's judgment, the defendant's timing in creating those trusts does not make the intent to conceal any more likely. The defendant did create a trust and transferred title of his home to it shortly after some IRS deficiency notices in 1995 and 1996, but the defendant continued to have his paychecks written to him personally until after August of 1999.

17

The court does not hold the defendant personally responsible for CSS's

switch to a trust account in late 1997.[4]  In the latter half of 1999, the

defendant's paychecks were made payable to Little Flower Security Trust.

Those paychecks, however, also showed a payee address of 413 Terrace

Wood Dr., St. Marys, Kansas, which is the same payee address as

appeared on the paychecks that had been issued to him personally in

previous years.  As evidenced by a deposit slip in Government's Exhibit

39B, this trust account was fully entitled, "Little Flower Security Trust, Greg

or Lucie Pflum" with the defendant's home address.  Except for the trust on

the defendant's home, all of the trust accounts for the defendant and his

employer bore a common first title, "Little Flower Security Trust," and were

operated out of the same small town bank.  For most of these trusts, the

defendant used the same invalid TIN found on the preprinted documents

provided in the trust handbook and kit from Clark & Associates.  The

defendant's correct name also appeared as a signatory party on those trust

accounts containing his personal income, and the construction account

even bore the defendant's correct social security number.

---

[4]For that matter, this change in business accounts hardly concealed
the payer, as the checks designated the account as  "Little Flower Security
Trust" and beneath this title was "Coil Springs Specialities."

18

In sum, to a reasonably discerning person, the defendant's manner of conducting business through these accounts was transparent, the paychecks were readily traceable, and his personal involvement in the trusts and his responsibility for their proceeds was evident.  The defendant openly and notoriously refused to acknowledge the IRS's authority over him or to recognize any legal obligation for complying with tax laws.  The court's impression of the defendant's use of the trusts is consistent with the tax protestor position he was advocating throughout this period.  He was employing these trusts as part of his simple misguided effort to avoid a taxable event rather than as part of some complex or intricate scheme or unusually sophisticated effort to conceal the offense.  The defendant's simple and blatant use of trusts does not transform this garden-variety tax protestor case into something more.  The defendant's objection is sustained.

**Guideline Calculations**

The result of the above rulings is the defendant's base offense level drops to 16 with no two-level enhancement but with a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  A total offense level of 13 and a criminal history category of one yields a

19

guideline range of 12 to 18 months.

In its post-hearing memorandum, the government argues for the first time that the defendant should receive a two-level enhancement for obstruction of justice and should not receive the reduction for acceptance of responsibility.  (Dk. 44, pp. 14-15).  The government argues for these adjustments because the sale of CSS in 2006 was questionable in that it appears to have been structured to assist David Pflum in placing assets beyond the IRS's reach.  The government points to letters and real estate offers written in 2006 indicating the defendant's father believed the defendant would assist him financially in these other real estate matters. As far as the paperwork submitted by the defendant to the IRS in December of 2007, the government accuses the defendant of trying to mislead the government by relying on IRS calculations based on the criminal investigation and not a civil audit.[5]  At the close of its memorandum, the government asserts in conclusory terms that the defendant has not continued to manifest acceptance of responsibility, because he has "denied his involvement, falsely denied and frivolously

_____

[5]It's the court's understanding from Ms. Vandenberg's testimony that for the tax years of 1996 through 2003 there had been no civil audit or assessment and that any IRS tax computation was made only for purposes of the criminal proceedings.

contested relevant conduct, and submitted false information to the IRS subsequent to entering his plea." (Dk. 44, pp. 19-20).  Thus, the government says it is withdrawing its recommendations pursuant to the plea agreement.  *Id.* at 20.

In arguing for adjustments based on actions and events before the fall of 2007 when the PSR was issued, the government is procedurally barred in bringing these untimely objections unless good cause is shown for extending the time limit.  Fed. R. Crim. P. 32(b)(2).  The government's sentencing memorandum offers no good cause reason for these untimely objections.

The court disagrees with the government's argument that the defendant obstructed or attempted to obstruct the investigation, prosecution or sentencing in this case by submitting tax returns in December of 2007 which relied in part on the government's tax calculations made in this criminal case.  The defendant's filings do not evidence a willful effort to mislead the IRS on the offense of conviction or matters related thereto.  Along with those tax returns, the defendant has submitted payments to the IRS totaling more than $100,000.00.  Any errors in those tax returns are matters to be resolved by the IRS through its civil

enforcement proceedings.  It would be injudicious to impose a longer

sentence just because the defendant's effort before sentencing to address

his tax debt is faulty or incomplete.  It is not the goal of sentencing to

discourage a defendant from trying to comply with tax laws, particularly

when the defendant is relying on his accountant's work.

Finally, the court finds that defendant's objections to the PSR

and positions taken during sentencing do not show that the defendant has

failed to manifest a continuing acceptance of responsibility.  The

government has not shown that the defendant's arguments at sentencing

are unquestionably false or frivolous.  Similarly, the court cannot find the

defendant's objections and arguments to be devoid of any good faith

factual basis.  The defendant here has not acted inconsistent with

acceptance of responsibility by falsely denying or frivolously contesting

relevant conduct determined to be true by this court.  The court rejects the

government's arguments to the contrary.

## FACTORS LESS THAN 18 U.S.C. § 3553(a)

The court's sentencing discretion is bound by the statutory

limits and factors outlined in 18 U.S.C. § 3553(a).[6]  In the last year, the

_____

[6]The sentence is to be "sufficient, but not greater than necessary to" meet the following sentencing goals:  (1) "to reflect the seriousness of the

22

Supreme Court has further explained the role of the sentencing guidelines

after *United States V. Booker*, 543 U.S. 220 (2005).  Though the

sentencing guidelines are only "advisory," *Rita v. United States*, 127 S.Ct.

2456, 2467 (2007), or "effectively advisory," *Booker*, 543 U.S. at 245, and

are only "one factor among several courts must consider in determining an

appropriate sentence," *Kimbrough v. United States*, 128 S.Ct. 558, 564

(2007), the Supreme Court has nevertheless instructed that a correct

calculation under the sentencing guidelines is the sentencing court's

"starting point and the initial benchmark."  *Gall v. United States*, 128 S.Ct.

586, 596 (2007).  The sentencing court must afford an opportunity for both

sides to advocate an appropriate sentence and then "consider all of the §

3553(a) factors to determine whether they support the sentence requested

_____

offense," (2) "to promote respect for the law," (3) "to provide just
punishment for the offense," (4) "to afford adequate deterrence to criminal
conduct," (5) "to protect the public from further crimes of the defendant,"
and (6) "to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the most effective
manner." 18 U.S.C. § 3553(a)(2).  In arriving at an appropriate sentence,
the court should consider:  (1) "the nature and circumstances of the
offense," (2) "the history and characteristics of the defendant," (3) "the
kinds of sentences available", (4) the sentence called for by the guidelines,
(5) any pertinent guideline policy statement, (6) "the need to avoid
unwarranted sentence disparities among defendants with similar records
who have been found guilty of similar conduct," and (7) "the need to
provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(1),
(a)(3)-(a)(7).

by a party." *Id.*  The sentencing court may not presume reasonableness of

a guideline sentence but "must make an individualized assessment" of the

factors on the facts as presented.  *Id.* at 596-97.  Should a non-guideline

sentence be considered appropriate,[7] the sentencing court "must consider

the extent of the deviation and ensure that the justification is sufficiently

compelling to support the degree of the variance." *Id.* at 597.   The

sentencing court then "must adequately explain the chosen sentence to

allow for meaningful appellate review and to promote the perception of fair

sentencing." *Id.*

### Nature and Circumstances of Offense

The defendant filed tax returns and paid income taxes until he

went to work for his father's company.  His father was a tax protestor with

strong opinions about the legality of the United States tax system.  The

---

[7]In *Kimbrough,* the Court observed that the guideline range in an
ordinary case is "'a rough approximation of sentences that might achieve §
3553(a)'s objectives.'"  128 S. Ct. at 574 (quoting *Rita*, 127 S.Ct., at 2465).
In contrast, a sentencing judge is more familiar with the particular case and
the defendant than either the Sentencing Commission or the court of
appeals.  *Id.*  Consequently, the sentencing court is "in a superior position
to find facts and judge their import under § 3353(a)" under the facts of each
individual case.  *Id.*  (quotation omitted).  Thus, a sentencing court's
decision to vary from the guidelines deserves the "greatest respect when
the sentencing judge finds a particular case outside the heartland to which
the Commission intends individual Guidelines to apply."  *Id.*  (quotation
omitted).

court has little difficulty believing that the defendant's father heavily influenced the defendant's opinions and actions with regard to his personal financial decisions, including the filing of tax returns and payment of federal taxes, and extensively controlled the defendant's actions with regard to the company's financial matters.[8]  As the trial court in which the defendant's father was prosecuted, the court is familiar with the defendant's father and the demonstrated zeal behind the father's personal convictions.  The defendant had been raised solely by his father.  The defendant went to work for his father and filed an income tax return his first year but thereafter followed his father's teachings.  The defendant's father considered himself the exclusive owner/manager of the business and responsible for the financial decisions, including the company's refusal to withhold taxes and report employees' salaries.  That the defendant merely adopted and followed his father's unusual opinions about the lawfulness of income taxes is not a defense to the charges of tax evasion, but it is a mitigating

---

[8]A Nevada transactions attorney who represented the defendant and his father in different matters wrote the court sharing a similar opinion on David's firm and passionate opinion about the federal income tax system. (Letter dated October 29, 2007, from K. Sue Trimmer).  She also opined that the defendant, not only as a son but as an employee, appeared to care about his father's opinion and therefore, was vulnerable to his father's pressure.

circumstance that distinguishes this case from mine run of tax evasion cases.

Once his father was convicted in federal court, the defendant rejected his father's influence and started a new legal entity to keep the business operational to the benefit of the eleven employees and their families, counting his own, and the small community of St. Mary's.  The defendant and Kevin Crane took over exclusive management of the company by purchasing the business assets from the defendant's father and terminating the father's further ownership and involvement in the business.  The defendant and Mr. Crane then took the extraordinary and expensive steps of bringing the new entity's current operations into compliance with federal and state tax authorities and workers' compensation laws.  They hired a local certified public accountant, Nicholas Novelly, to organize and assist in bringing the business into compliance with reporting, withholding and other requirements under state and federal laws.  The evidence at the sentencing hearing shows the defendant has been successful in righting this business and having this new company meet all of its current legal obligations.

The defendant has taken significant strides toward complying

with his personal federal income tax obligations.  Through his accountant,

Mr. Novelly, he has filed income tax returns and submitted payments on

the taxes due for most of the years in question.  The government alleges

the defendant's filed returns are part of an ongoing effort to mislead the

IRS.  Besides the reasons stated above, the court summarily rejects the

government's characterization, as the defendant's accountant prepared

and submitted the returns and testified in support of the good faith effort

behind their preparation.  The court expects the IRS will resolve any

outstanding disputed issues over the amount of taxes in the civil

enforcement proceedings, and the IRS's current arguments in that regard

do not significantly diminish the court's impression of the defendant's

substantial efforts toward compliance.  The defendant's post-offense efforts

at accepting liability for federal income taxes, at directing his agent to

prepare and file tax returns and at submitting substantial payments toward

these owed amounts certainly distinguish this case from other tax evasion

cases involving tax protestors.

<u>History and Characteristics of Defendant</u>

The defendant is a thirty-eight-year-old father of five boys, all of

whom are under the age of eleven, and he serves as their primary

caretaker in the evenings and on the weekends.  He is an active and

supportive member of his family, parish, and community.  He is the only

person at Coil Springs with the knowledge and experience to perform the

technical and engineering duties involved in the custom design work that

accounts for sixty-five percent of the Coil Spring's entire business.  There is

no one else in this small and remote community who could perform these

duties, other than the defendant's father who cannot be involved in the

business because of agreements with state government agencies.  Even if

a spring engineer could be brought into the business, this person would

need time to gain experience with the typical custom work done by Coil

Springs, as the technical history and data on former work are known only

by the defendant.  Without the custom design business, Coil Springs would

have to lay off employees and eliminate substantial health care benefits

currently furnished to employees and their families.

<u>Sentencing Goals</u>

The court believes a non-custodial sentence here is sufficient

and not greater than necessary to serve the different sentencing goals and

reflect proper consideration of the relevant sentencing factors.  The

seriousness of the offense is not lost in an extended term of probation,

28

particularly when the defendant has already taken such significant and costly strides toward reform.  The unique circumstances of the defendant's offense conduct, as well as, the defendant's critical importance to his business are factors which certainly recast several of these sentencing goals.  A sentence of incarceration as opposed to probation here would not be more likely to promote the defendant's respect for the law or to afford more deterrence.  The defendant's actions to date demonstrate a fuller understanding and comprehension of both than what would be reasonably expected of most defendants even after incarceration.  During a three-year term of probation, the defendant will be expected to cooperate with the IRS and comply fully with federal and state income tax laws and authorities, both in filing returns for past and present years and in making reasonable and regular payments of any properly determined tax liability, including any and all interest and penalties associated with the principal amounts.  This is not an insignificant punishment particularly considering the nature of the defendant's offenses, the length of probation, and his already demonstrated commitment to accepting full responsibility for his offenses.

IT IS THEREFORE ORDERED that the defendant's objections to the PSR are granted in part and denied in part and that the

29

government's objections to the PSR are rejected as untimely;

IT IS FURTHER ORDERED that this order will serve as the court's statement of reasons and to be incorporated by reference during the sentencing hearing.   Imposition of sentence is hereby set for April 24, 2008 at 2:30 p.m.

Dated this 16th day of April, 2008, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge